UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
GOUR G. BHADURI,                                         :
                                                         :
                                   **Plaintiff,**     :
                                                         :     05 Civ. 7024 (HB)
     - against -                                       :
                                                         :     <u>OPINION</u>
                                                         :
SUMMIT SECURITY SERVICES, INC.,                          :
                                                         :
                                  **Defendant.**     :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

        On August 8, 2005, Plaintiff, Gour G. Bhaduri ("Bhaduri" or "Plaintiff"), proceeding *pro se*, filed a complaint against his employer, Summit Security Services, Inc. ("Summit" or "Defendant"), that alleged race and national origin discrimination, retaliation, and hostile work environment claims pursuant to Title VII of the Civil Rights Act of 1964, as well as age discrimination pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), as codified, 29 U.S.C. §§ 621-634. Defendant moved to dismiss the Complaint for failure to state a claim. In an August 8, 2006 Opinion and Order,[1] the motion to dismiss was granted with respect to the retaliation claim but denied with respect to Plaintiff's claim that he received less money due to his race and national origin. Since Plaintiff, with the Court's permission, amended his complaint to allege instances of harassment and age discrimination that occurred within the statute of limitations, those claims will be considered here also. On October 20, 2006, Defendant filed another motion to dismiss the Amended Complaint and all remaining claims pursuant to Federal Rules of Civil Procedure 12(b)(1), lack of subject matter jurisdiction, and 12(b)(6), failure to state a claim. This 12(b)(6) motion was, with notice to the Plaintiff and at the behest of the Defendant, converted to a motion for summary judgment. For the reasons set forth below, this motion is DENIED.

        **I.**        **BACKGROUND**

        The facts set forth below are undisputed, unless stated otherwise. Plaintiff, born in India on March 1, 1927, was hired as a full-time security guard by Summit on April 22, 1992. Plaintiff remains employed as a security guard with Summit and is currently assigned to the 110 Lafayette

---

[1] <u>Bhaduri v. Summit Sec. Servs.</u>, 2006 WL 2290766 (S.D.N.Y. Aug, 8, 2004).

Street work site.

*1. Plaintiff's 1993 New York State Division of Human Rights Complaint*

Shortly after hire, Plaintiff's work assignment was changed from a full-time schedule to a part-time schedule without benefits. Bhaduri requested a full-time schedule but his request was denied by the Personnel Officer. Thus, on February 23, 1993, Bhaduri filed an age discrimination complaint with the New York State Division of Human Rights ("NYSDHR"). Neil Fenton Declaration ("Fenton Decl."), Ex. A. He was subsequently terminated in February 2004. Pl.'s Mot. in Opp'n of Def. Motion to Dismiss ("Pl.'s Opp'n"), Ex. 38, Employee Termination Notice.

On or about October 3, 1994, as a result of Bhaduri's complaint to the New York State Division of Human Rights, Summit entered into an agreement with the Plaintiff whereby they agreed, among other things, to reinstate Bhaduri as a full-time employee at the pay rate of $6.00 per hour. Fenton Decl., Ex. C, Pre-Determination Conciliation Agreement ("Agreement") ¶ 5 (Sept. 29, 1994). The Agreement further provided that in the event that there was no work site available that paid $6.00 per hour, Bhaduri would be paid at the rate set for the work site to which he was assigned. Id. He was reinstated as a security guard for Summit on October 6, 1994, but the Agreement provided that his seniority would be retroactive to the start of his employment on April 22, 1992. Id.

*2. Plaintiff's Work Environment*

As a result of the 1993 NYSDHR complaint, Plaintiff claims that he has been harassed by Summit employees in order to force him to quit his job. Their reason – he was too old to do the job. The harassing conduct alleged by the Plaintiff ranges from verbal taunts and threats to assignment to arduous and unpleasant tasks (which are purportedly outside of his job description). A sample of the alleged harassing conduct, dating from 1993 to present, gathered from his affirmations as well as deposition testimony, follow.

- Assignment to work sites all over the city, with little to no notice, and no compensation for travel costs.

- Told to appear at a work site and was then prevented from entering or reporting for work.

- Given long shifts without a break and assigned World Trade Center site for the longest period of time.

- Assigned to work sites with poor work conditions.

- Yelled at, taunted and physically threatened by co-workers and field supervisors.

Plaintiff contends that he suffered bronchitis and other illnesses as a result of some of his assignments to work sites with harsh conditions.

*3. Plaintiff's Work History*

During Plaintiff's tenure at Summit, particularly in the early years, his work assignments have been to various work sites. The chronology of his transfers is as follows:

>April 25, 1992 –  305 63rd Street[2]
>
>May 1, 1992  –  254 Canal Street / 110 Lafayette Street
>
>March 5, 1993 – 145 East 32nd Street (NYU Medical Center)
>
>October 6, 1994 –  254 Canal Street / 110 Lafayette Street
>
>January 5, 1995 – 1460 Broadway and 41st Street
>
>July 21, 1995 – 542 West 112th Street (Columbia University)
>
>January 8, 1996 – 1460 Broadway
>
>February 15, 1996 – 21 West Street
>
>June 4, 1997 to present – 254 Canal Street/ 110 Lafayette Street

Letter from Neil Fenton to Honorable Harold Baer, Jr. (October 31, 2005). This chronology excludes any work sites to which Plaintiff was temporarily assigned.

Once Plaintiff was granted full-time status, he was eligible to join the Union available to Summit employees, Allied International Union ("Union"). He did so. The Union bargains on behalf of all members and on their behalf, enters into a Collective Bargaining Agreement ("Agreement") with Summit that regulates wages, hours, and the conditions of their employment. Plaintiff's wages are governed by both the Collective Bargaining Agreement and the work site to which he is assigned. Upon rehire as a full-time employee, Bhaduri signed a statement that acknowledged this fact. It provided as follows.

>1. I, Gour Bhaduri, fully understand that my present hourly rate of pay is determined by
>the location to which I have been assigned.
>
>2. I also fully understand that my present assignment can be changed due to any Operational Requirement, Account Closure, Disciplinary Action, Client Request, or other circumstances.
>
>3. I also fully understand that my current hourly rate of pay can be changed to the hourly rate which prevails at the new location of assignment.

---

[2] The record fails to indicate whether this was East or West 63rd Street.

3

Angelica Rosello Declaration ("Rosello Decl."), Ex. B.  Based on the record before me, for the past five years, Plaintiff received the following hourly wages while assigned to the 254 Canal Street/ 110 Lafayette Street site.

> Dec. 2001 - Apr. 2004: $6.75
> Apr. 2004 -  Apr. 2005: $6.90
> Apr. 2005 - Dec. 2005: $7.05

See Bhaduri Pay Stubs, December 2001 through December 2005, Pl.'s Ex. A.  Most recently, at Summit's request, Bhaduri received another raise from $7.05 to $7.25, effective February 5, 2006.  Pl.'s Opp'n, Ex. 46.

*4.  Plaintiff's 2005 EEOC Complaint*

On February 28, 2005, Bhaduri filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") that alleges that since he filed his age discrimination complaint in 1993, he has been continuously harassed by his employer.  Further, Bhaduri alleges that other non-Indian employees with less seniority are paid more than he is.  Fenton Decl., Ex. A.  The substance of Bhaduri's EEOC charge is as follows.

> In 1993, I filed a complaint, heard by the New York City Human Rights Commission, against Summit for discriminating against me due to my age.  The complaint was found to have merit and an award in my favor was issued precluding Summit from preventing my full time employment with the company. . . .  Since the time of my aforementioned complaint, Summit has continuously harassed me while on the job, as well as calling me into work, then upon my arrival, using abusive words and sending me back home.
>
> I am currently receiving hourly compensation at the rate of $6.90. . . . It recently came to my attention that a fellow employee, Modstor Nunej [sic][Modesto Nunez], is making $6.75 per hour and has only been on the job for five months and had no previous experience in the field of hired security.  My colleagues of Hispanic and African-American descent are earning comparatively higher wages than myself and receiving other benefits although they have less experience/seniority than I do.  This disparity in hourly wages is explainable only in terms concerning my race, national origin, and as a form of retaliation for my former charge against Summit for discrimination on the basis of my age.

Neil Fenton Declaration ("Fenton Decl."), Ex. A, EEOC Charge (Feb.28, 2005).

Bhaduri received a right-to-sue letter on May 18, 2005 and his complaint was filed with this Court on August 8, 2005.

## II.	STANDARD OF REVIEW

4

Federal Rule of Civil Procedure 12(b) provides that if "matters outside the pleading are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." However, a district court may convert a Rule 12(b)(6) motion into a motion for summary judgment without express notice to the parties. See In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985). The "essential inquiry" is whether the parties "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment" or instead were "taken by surprise and deprived of a reasonable opportunity to meet the facts outside the pleadings." Id. Defendant requests that this Court convert his motion to dismiss into one for summary judgment. Since Plaintiff has sufficient notice that he was likely to receive a motion for summary judgment from Defendant, and he also provided the Court with material facts outside the pleadings in support of his answer to the motion, I will grant the Defendant's request.[3]

A court will not grant a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 unless the movant establishes that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A disputed issue of material fact alone is insufficient to deny a motion for summary judgment, the disputed issue must be "material to the outcome of the litigation," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), and must be backed by evidence that would allow "a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In ruling on a summary judgment motion, the Court resolves all ambiguities and draws all inferences against the moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (*per curiam*); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). Further, since the plaintiff is the non-movant and proceeding *pro se*, I must construe his papers liberally and "interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.

---

[3] Not only did the Court inform the Plaintiff in a letter dated October 16, 2006 that the Defendant would serve him with a motion for summary judgment on Wednesday, October 18, the Defendant also included the required notice to a *pro se* litigant with respect to opposing summary judgment motions along with the documents it provided to the Plaintiff.

1994) (internal citation omitted).

In employment discrimination cases where it is necessary to explore an employer's intent and motivation, summary judgment may not be appropriate. See Patrick v. LeFevre, 745 F.2d 153, 159 (2d Cir. 1984). Consequently, affidavits and deposition testimony must be scrutinized for circumstantial evidence, which if believed, would support a finding of discrimination. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

### III.    DISCUSSION

Plaintiff asserts two primary grievances in his EEOC complaint. The first is the hostile work environment created by Summit employees following his age discrimination complaint to the NYSDHR in 1993, and the second is a wage discrimination claim on the basis of race, national origin, and age. As a preliminary matter, Defendant asserts two procedural grounds for dismissal of this complaint, lack of subject matter jurisdiction and that his claims are time-barred. For the reasons below, I find both unavailing.

**A. Procedural Grounds**

*1. Lack of Subject Matter Jurisdiction / An Exception to the Rule*

Defendant argues that this Court lacks subject matter jurisdiction over the age and hostile work environment causes of action because those claims go beyond, and are not checked off, amongst his allegations in the February 2005 EEOC charge. I disagree.

A court has subject matter jurisdiction to hear claims that are raised in the EEOC complaint or are based on conduct after the EEOC charge has been filed, if the claims are "'reasonably related' to [those] alleged in the EEOC charge." Butts v. City of New York Dep't of Housing and Presbyterian and Dev., 990 F.2d 1397, 1401 (2d Cir. 1993); Deravin v. Kerik, 335 F.3d 195, 200-01 (2d Cir. 2003). The Second Circuit has held that claims may be reasonably related to the allegations in an EEOC complaint when 1) the complained of conduct would fall within the scope of an EEOC investigation into the charge, 2) a retaliation claim was brought for filing the EEOC charge, and/or 3) the plaintiff alleges additional incidents of discrimination carried out in the same manner alleged in the EEOC charge. Butts, 990 F.2d at 1402-03. This inquiry depends on the facts and circumstances of the particular case. Deravin, 335 F.3d at 201 ("[T]he focus should be 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.").

On February 29, 2005, Bhaduri filed a complaint with the EEOC that alleged that he was discriminated against on the basis of race and national origin as well as retaliated against by

6

Summit Security for filing a previous EEOC complaint in 1993. The substance of the 2005 EEOC complaint provides that he filed an age discrimination complaint in 1993 for Summit's failure to assign him to full-time work opportunities, and since the time of that filing, he has been continuously harassed while on the job.[4] Further, he alleges that he is paid less than Latino and African-American colleagues who have less experience than him, on account of his race, national origin, and in retaliation for his former NYSDHR age discrimination complaint.

On the Charge of Discrimination form, the Plaintiff only checked the "race," "retaliation," and "national origin" boxes. Based on this, Defendant argues that the claims raised in Plaintiff's federal complaint with regard to a pay disparity and harassment on account of his age go beyond the allegations made in the EEOC complaint and must be dismissed for want of jurisdiction. Relying on Butts and its progeny, and because I find that Plaintiff's age-based and hostile work environment claims are reasonably related to the conduct recounted in his EEOC charge of discrimination, this branch of the motion is denied.

Just to add icing to the cake, and contrary to Defendant's assertions that the 2005 EEOC complaint is bereft of age-related allegations, Plaintiff begins by stating that he is seventy-seven year old man. He clearly sets forth that the basis for his retaliation claim is a prior discrimination charge he filed in 1993 and which alleged that Summit refused to give him full-time employment because of his age.[5] He described the prior EEOC charge as follows.

> In 1993, I filed a complaint, heard by the New York City Human Rights Commission, against Summit for discriminating against me due to my age. The complaint was found to have merit and an award in my favor was issued precluding Summit from preventing my full time employment with the company.

Fenton Decl., Ex. A. This statement is a clear signal to the EEOC investigator that age-based discrimination is likely a factor in his claim. Further, Plaintiff later, in the discrimination charge filed with the EEOC, opines that his wage disparity is the cause for the alleged retaliation, all stemming from his previous age discrimination complaint against Summit.

> This disparity in hourly wages is explainable only in terms concerning my race, national origin, and as a form of retaliation for my former charge against Summit for discrimination on the basis of my age.

Id. These allegations were sufficient to put the EEOC investigator on notice as to Plaintiff's age

---

[4] Although not stated in the EEOC complaint, Plaintiff's affirmations reveal he believes he was harassed by his co-workers in order to force him to quit his job.
[5] I found that this claim was time-barred in my August 8, 2006 Opinion & Order.

7

discrimination claim.  Williams v. New York City Housing Auth., 458 F.3d 67, 70 (stating that "the central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'").  As a result, since Plaintiff's current complaints of harassment and wage disparity on the basis of age "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," Butts, 990 F.2d at 1402, all claims are properly before me.[6]

*2. Statute of Limitations*

As a general rule, for claims to be timely under Title VII, the discrimination charge must be filed within 180 days of the alleged illegal employment action or, in the case where the claimant has already filed a charge with a state or local agency, the charge must be filed with the EEOC within 300 days of the alleged discriminatory act.  See 42 U.S.C. § 2000e-5(e)(1).  Here, the 180 day timeframe applies because there is no indication that Bhaduri filed his latest complaint with the NYSDHR.  Thus, to be timely, a claim must involve discrimination that occurred after August 14, 2004.

However, there is a continuing violation exception to the statute of limitations for Title VII claims.  Under this exception, if a charge of discrimination is filed "that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims or acts of discrimination under that policy will be timely even if they would be untimely standing alone." Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993).  In other words, in cases where the plaintiff has a claim for discrimination within the statute of limitations, here, after August 14, 2004, earlier acts of discrimination will be admissible.

Based on this standard, neither Plaintiff's Title VII hostile work environment or race and national origin discrimination claims are time-barred.

**B.  Hostile Work Environment Claim**

To state a hostile work environment claim, the plaintiff must allege that his work environment is abusive.  Harris v. Forklift, 510 U.S. 17, 22 (1973).  Specifically, the Plaintiff must show that he is 1) a member of a protected class, 2) suffered unwelcome harassment, 3) is harassed because of his membership in a protected class, and 4) the harassment is sufficiently severe or pervasive to alter

---

[6] Bhaduri maintains that he told the EEOC investigator to include age discrimination in the Charge of Discrimination, but the investigator indicated to him that his age discrimination complaint was encompassed in his civil rights violation complaint.  Fenton Decl., Ex. F, Bhaduri Deposition ("Bhaduri Dep.") at 17:6-18:6.  Plaintiff has failed to present evidence of agency error to support his claim.  Cf. B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1102 (9th Cir. 2002); See also Deravin, 335 F.3d at 203.

conditions of his employment and create an abusive work environment.  Meritor Sav. Bank FSB v. Vinson, 477 U.S. 57, 65 (1986).  The court looks at the totality of the circumstances to determine harassment – the frequency and severity of the conduct, whether the conduct was physically threatening or humiliating, and whether the behavior interferes with an employee's performance.  Harris, 510 U.S. at 23.  It is undisputed that Plaintiff is a member of a protected class based on his race, national origin, and age.

*1. Plaintiff's Work Conditions*

       Plaintiff has set forth numerous examples of verbal and physical harassment by Summit employees, dating from 1993 to present, which support his hostile work environment claim.  For example, he states he was yelled at and taunted by his co-workers and supervisors, assigned to work sites with poor work conditions, and that he was physically threatened.  Bhaduri testified that in 2001 a Summit guard threatened to stab him in the stomach because Bhaduri reported that he failed to follow company procedures.  See Bhaduri Dep. 54:9-22.  Bhaduri called the police and filed an incident report with Summit because he feared for his safety.  Pl.'s Opp'n, Ex. 33.  Based on Plaintiff's affirmations, he raises an issue of fact as to whether this conduct constitutes a hostile work environment under Title VII.

       However, to defeat a motion for summary judgment, not only must Plaintiff show he had been harassed, but that harassment must be connected to his membership in a protected class.  Although Plaintiff's support on this point is slim, he raises an issue of fact sufficient to defeat the motion.

       Bhaduri is assigned to the 12-8 a.m. shift and he alleges that his co-workers believe he is not capable of performing the job due to his age.  As an initial matter, Bhaduri affirms that in 1996, he was told by Summit supervisor, Wimbly, that dispatchers directed Wimbly to catch Bhaduri sleeping on the job, so that he could be removed for cause.[7]  He also contends that the spying conducted by his field supervisor, Siplis in October and December of last year was to the same end.  Another field supervisor, Hernandez, accused the Plaintiff of taking drugs on the job so as to remain awake.  Amended Compl. at 6.  The insinuation was that a person of Plaintiff's age was not able to stay up during this late night, early morning shift.  This underscores Plaintiff's contention that he was harassed in an effort to force him from the job because of his age.

       In addition, Bhaduri states that field supervisor Evincio Hernandez ("Hernandez"), cursed him on account of his age.  Amended Compl. at 6.  He contends that Hernandez attempted to make his work environment difficult in an attempt to get him to retire.  For example, Bhaduri testified at his

---

[7] It appears that if Summit security guards are found sleeping on the job, they can be fired.

deposition that Hernandez assigned him manual duties, that were not only difficult, but outside of his job responsibilities.

> Q: With respect to the complaint that you made after 2004, two years after your posting at 110 Lafayette Street, Summit changed your position to hard labor?
>
> A: Yes.
> . . .
>
> A: On the corner of that street, Lafayette Street, there is a Rite Aid, 6 Lafayette Street. They keep newspapers, huge newspapers, the bags of newspapers, bundles outside. I have to pick up heavy [sic] in the chilly, cold and rain. I caught bronchitis and pneumonia.

Bhaduri Dep. at 91:7-20.

In order to survive summary judgment, Bhaduri must also show a basis to hold Summit vicariously liable for the conduct that created the hostile environment. See, e.g., Kotcher v. Rosa & Sullivan Appliance Center Inc., 957 F.2d 59, 63 (2d Cir. 1992). Employer vicarious liability for a Title VII hostile work environment violation can be established if the individual responsible for the harassing conduct was (or is) the plaintiff's supervisor, with immediate authority over the employee. Mack v. Otis Elevator Co., 326 F.3d 116, 125 (2d Cir. 2003). That is the case here. Since Plaintiff's allegations are sufficient to hold Summit vicariously liable for the harassing conduct by their employees, consequently, the motion may not be granted as to this claim.[8] I have, as I must, given the *pro se* Plaintiff the benefit of the doubt on this and other claims. While some of his claims are tenuous at best, it is in my view only fair to wait for a trial to make a determination. The parties have agreed to a non-jury trial.

## C. Plaintiff's Wage Disparity Claim Due to Plaintiff's Race, National Origin, and Age Discrimination

Plaintiff alleges, pursuant to Title VII and ADEA, not only that he received less money per hour as compared with non-Indian employees who were less senior than he was, but that the disparity is explained on the basis of his race, national origin and age. With respect to Title VII and ADEA, the elements to prove a *prima facie* case are the same and the burden-shifting framework of McDonnell Douglas Corp. v Green, 411 U.S. 792 (1973), applies. The plaintiff

---

[8] Defendant argues they had no notice about any harassing conduct, thus they cannot be held vicariously liable for this claim. Not only does the record before me indicate that Plaintiff filed at least one incident report with Summit, but notice is only required when the harassing conduct is committed by non-supervisory employees. See, e.g., Petrosino v. Bell Atl., 385 F.3d 210, 225 (2d Cir. 2004).

10

must show that (1) he is a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discriminatory intent. See, e.g., Sanders v. New York City Human Res. Admin., 361 F.3d 749, 755 (2d Cir.2004).  Thereafter, the burden of going forward shifts to the employer to "articulate some legitimate, non-discriminatory reason for the employer's rejection." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  If the employer is able to do so, then plaintiff must show that the stated reason is pretextual. Id.

It is undisputed that Plaintiff, a 79 year-old male of Indian descent, is a member of a protected class and Defendant does not contend that he was unqualified for his job as a security guard.  The critical inquiry here is whether the Plaintiff can demonstrate that he suffered an adverse employment action and whether he can demonstrate a connection between that employment action and his race, national origin, and/or age.

An adverse employment action is a materially adverse change in the terms and conditions of an individual's employment which may include: "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or another indices . . . unique to the particular situation." See Richardson v. New York State Dep't of Correctional Serv., 180 F.2d 426, 446 (2d Cir. 1999).  The change must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Galabya v. New York City Bd. Of Educ., 202 F.3d 636, 640 (2d Cir. 2000)).

Plaintiff alleges that non-Indian, less senior employees received a higher hourly wage than he did.  If true, this qualifies as an adverse employment action, and at the very least, raises a material issue of fact. Bazemore v. Friday, 478 U.S. 385, 395-96 (1986) (holding that pay disparities between a black employee and a similarly situated white employee can serve as the basis for a lawsuit under Title VII).

Documentary evidence submitted by the Plaintiff demonstrates that from December 2001 through April 2004, he did not receive any salary increases.  In fact, at the time Bhaduri filed his complaint, he made $7.05 per hour, a pay increase of merely $1.05 over more than thirteen years of employment with Summit.  Further, even though both parties agree that wages differ by worksite, Plaintiff testifies that he was transferred to numerous worksites, yet his salary did not change.

> Q:  When you went to these different places, your rate of pay changed?
> A: No.

> Q: Never?
>
> A: Only in Columbia University. . . .

Id. at 77:25-78:7.

The final element Plaintiff must establish to set forth a *prima facie* case on this claim is that he was paid less because of his race, national origin, and/or age. The crux of Bhaduri's claim is that as a person of Indian descent, he received less money than all of his colleagues with less experience, and this can only be explained by discrimination on the part of Summit. The following allegations, if believed, give rise to an inference of race, national origin, and age discrimination with regard to Plaintiff's wages and are enough to survive this motion to dismiss.

First, Bhaduri notes that when he was first hired by Summit, he, along with two individuals of Indian origin assigned to the same work site,[9] requested, and were denied a full-time schedule (which came with more money and benefits), whereas their African-American colleagues assigned to the same work site, were given full-time work, and likely, the benefits that go with full-time employment. Bhaduri testified that he was told by a Summit supervisor that he was not given full-time work because of his age. It was only after Bhaduri filed a complaint with the NYSDHR in 1993, that the case was settled (with no admission of liability by Summit), and required that Bhaduri be given full-time work.

However, even when he was given a full-time schedule, non-Indian employees received more money per hour than he did. This happened despite the fact that he had more years of relevant experience than these individuals (and in some instances, they were the same age or even older than him). As an example of this discrepancy, he affirms to the following.

> I also worked with Mr. [Nick] Riveria, a Hispanic of seventy years of age at 542 West 112th Street, Columbia University [in August 1995]. He had full-time on work assignment despite his age. He earned an hourly rate of seven dollars, although he was junior to me in the length of service and had no requisite education, my hourly salary at the location in July, August, and September of 1995 was six dollars.

Pl.'s Affirmation in Opp'n to Motion to Dismiss at 3. Plaintiff also asserts that not only did non-Indian guards receive a higher salary than him, they also received pay increases more rapidly than he did, widening the wage discrepancy. As an example, he cites to another Summit employee, Mr. Hector Jotas, a white, 68-year old full-time guard. According to Plaintiff, Jotas' salary was increased to $7.00 per hour a mere one and a half years after he joined Summit. Id. As pointed

---

[9] His colleagues of Indian descent were eventually fired.

12

out above, Plaintiff has received little over a $1.00 increase over his 13 year tenure with Summit. Most telling, and likely tied to Bhaduri's status as a racial minority, Bhaduri affirms that his field supervisor, Evincio Hernandez, told him to lick someone's feet for a raise.  Amended Compl. at 5 ("Again, he ridiculed my economic distress and advises me on 01-28-06 to lick the feet of the client to get an increase.").

Plaintiff contends that Summit's failure to provide him with a wage increase and pay him less money was due to their desire to force him to quit his job because of his race, national origin, and age.  Plaintiff presents enough here to raise an inference of discrimination as to the wage discrepancy.

In response to Plaintiff's allegations of race, national origin, and age discrimination, Defendant argues that Plaintiff's salary was governed by two things – a Collective Bargaining Agreement between the Union and Summit as well as Summit's contract with a particular worksite.  They submit two Collective Bargaining Agreements in support of the motion.  Both agreements provide for a minimum fifteen ($.15) cent increase in salary each year.  The first Agreement was in effect until September 30, 1998, and provided for automatic renewal each year until either or both parties decided to terminate the Agreement.  The Agreement did not preclude Summit, in its sole discretion, from "grant[ing] employees merit increases and/or wage differentials for particular jobs."  Rosello Decl., Ex. D.  It is unclear when that Agreement ended, but it did.  The second Collective Bargaining Agreement in the record is effective as of November 1, 2003 through October 31, 2006.  Defense counsel represented at oral argument that there was no Collective Bargaining Agreement applicable during 2002 and 2003 due to the events surrounding 9/11.

At least with respect to the first Agreement, employer discretion is permitted with regard to the wages of their employees.  Bhaduri also affirms that a senior Summit officer ("Mr. Joe") confirmed that understanding.  On February 10, 1996, Bhaduri reports that in response to his question about how wages were determined, Mr. Joe replied as follows.

> Seniority, performance, and education are side issues.  We determine work by a secret logistic.

Amended Compl. at 4.  Plaintiff has put forth enough here to raise a genuine issue of fact with respect to whether his salary complied with the minimum pay increases set forth in the Collective Bargaining Agreement.

13

Second, Defendant argues that Plaintiff could have received more money if he requested a transfer to a worksite whose contract allowed for a higher wage. According to Summit, because of Bhaduri's seniority, he would have received preference for transfer.[10] Bhaduri counters that he was unaware that he would receive more money if he requested a site transfer, and Defendants do not show otherwise.

> Q: Did Summit ever advise you at any point during your career, that the location makes a determination on the pay?
>
> A: Yes, they told me when I went to EEOC, not before that.
>
> Q: Never before that?
>
> A: Never before that. Before that they told me to quit, and they laid traps to catch me.

Bhaduri Dep. at 74:6-14. This testimony raises an issue of fact with respect to whether Summit's reasons for the wage discrepancy (to the extent they acknowledge one exists) were pretextual. In other words, it is unclear whether the alleged wage discrepancy was motivated by discrimination or a result of neutral contract terms between the parties. For now, Plaintiff alleges enough to sustain his discrimination claims on the basis of race, national origin, and age.

## IV. CONCLUSION

For the reasons stated above, this motion for summary judgment is denied as to all claims. The parties have elected a bench trial that will commence before me on Monday, November 6, 2006 at 10 AM in Courtroom 23B. The Clerk of the Court is instructed to close this motion and remove it from my docket.

**IT IS SO ORDERED.**

New York, New York
November 2, 2006

_____
U.S.D.J.

---

[10] It is unclear, what, if anything, employees may receive on account of seniority with the company.